IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| KIM GRAVES, | : | |
| Plaintiff, | : | Case No. 3:14cv00067 |
| v. | : | Chief Magistrate Judge Sharon L. Ovington (By full consent of the parties) |
| DAYTON GASTROENTEROLOGY, INC., *et al.*, | : | |
| | : | |
| Defendants. | | |
| | : | |

**DECISION AND ORDER**

**I.     INTRODUCTION**

Plaintiff Kim Graves, a registered nurse and certified nurse anesthetist, brings this employment discrimination case against her former employer, Dayton Gastroenterology, Inc., and alleged supervisor, David Schum.  Plaintiff claims that Schum sent her sexually harassing text messages and otherwise subjected her to a hostile working environment. (Doc. #1, *PageID#* 2).  Plaintiff ultimately resigned from her job and filed a charge of discrimination with the Ohio Civil Rights Commission ("OCRC") in May 2013.  (Doc. #1-3, *PageID#* 20).  She received a letter of determination in December 2013 and filed this case in February 2014.

Plaintiff brings claims for hostile work environment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and Ohio Rev. Code § 4112 *et seq.*,

as well as state law claims for intentional infliction of emotional distress, negligent infliction of emotional distress, and defamation.

This case is presently before the Court upon Defendants Dayton Gastroenterology and David Schum's Motion to Dismiss (Doc. #4), Plaintiff Kim Grave's Response in Opposition (Doc. #5), and the record as a whole.

## II.  PLAINTIFF'S COMPLAINT

Defendant Dayton Gastroenterology hired Plaintiff on May 12, 2012 to work as a registered nurse and nurse anesthetist. (Doc. #1, *PageID#* 4). Plaintiff alleges that during her employment at Dayton Gastroenterology, "David Schum was a co-employee and supervisor . . . which subsequently allowed the opportunities for sexual harassment between management and employees that caused significant embarrassment for Plaintiff Graves." (*Id.*). According to Plaintiff, from December 2012 until February 2013, "Schum communicated sexually suggestive text messages [to her], which [she] reported to Craig Penno, Practice Manager." (*Id.*). Plaintiff alleges that she rebuked such advances, and thereafter, "[d]uring the period of February 2013 to May 2013, Defendant David Schum became hostile towards [her] in the working environment and in front of patients." (Doc. #1, *PageID#* 1-5).

Plaintiff contends that she again complained to Craig Penno, but no action was taken to protect her from Schum's alleged misconduct. (Doc. #1, *PageID#* 5). Plaintiff alleges, "[b]y reason of this intimidating and hostile work environment, [she] was forced to resign her position." (*Id.*). Plaintiff asserts that, despite approaching Defendants on

2

"numerous occasions" from December 2012 to May 2013 to report "this intimidation and hostile work environment and to seek remedies for this problem," nothing was done to "remedy the situation and [Defendants] failed to provide [her] with proper protection from further sexual harassment and hostile work environment in her position." (*Id.*). As a result, Plaintiff alleges she "has suffered loss of income, embarrassment, humiliation and intimidation, and physical illness, along with a loss of confidence in her ability to perform in a position for which she has been trained." (*Id.*).

When Plaintiff filed her charge with the OCRC, she attached a timeline of events detailing alleged incidents that occurred from December 2012 through March 2013. (Doc. #1-2, *PageID#* 16-19). Both the OCRC charge and timeline are attached to her Complaint. The OCRC charge is central to Plaintiff's claims and properly considered at the motion to dismiss stage.[1] Plaintiff alleges in her timeline that she received two inappropriate text messages of a sexual nature from Schum, reported the messages to Penno, and received an apology letter from Schum in February 2013. (Doc. #1-2, *PageID#* 16). Plaintiff alleges Schum's behavior thereafter was often "rude" and "inappropriate." (Doc. #1-2, *PageID#* 17). She alleges Penno called her toward the end of February 2013 to follow up on how things were going with Schum. (*Id.*). Plaintiff

---

[1] *See Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007) ("[W]hen a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment."); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997)("'[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.'" (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

stated that Penno asked her if she could "tolerate" working with Schum, she responded, "I guess I really don't have a choice I need to be employed," and Penno allegedly never asked her about the situation again. (*Id.*).

Plaintiff's timeline indicates that in March 2013, "[t]he work environment continues to be hostile, David Schum is rude." (*Id.*). Plaintiff recalled one occasion when, after interviewing a patient, Schum "threw the chart at me and said how do you like working here now. The patient then asked me what I did to make him so mad." (*Id.*). Plaintiff also stated that Schum would not provide her with her monthly schedule at the same time as other employees, would not communicate changes in her schedule to her, and on multiple occasions displayed rude behavior to her, even in front of patients. (Doc. #1-2, *PageID#* 17-18). Plaintiff noted that on one occasion Schum changed her job duty; when she asked him about it, he responded "you did this to yourself, you should have never gone to Craig [Penno], this is just the beginning." (*Id.*). In addition to multiple other alleged incidents of misconduct by Schum, Plaintiff stated that she often did not receive breaks from Schum despite the fact he would routinely give other nurses breaks throughout the day. (Doc. #1-2, *PageID#* 19).

As to relief, Plaintiff requests attorney fees, costs, and "[a]n award, jointly and severally, against defendants of punitive and exemplary damages of $2,000,000." (Doc. #1, *PageID#* 12).

### III. MOTION TO DISMISS

To determine whether a complaint states a claim upon which relief can be granted,

4

the Court accepts the plaintiff's factual allegations as true and construes the complaint in the light most favorable to the plaintiff. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).

In order "to survive a motion to dismiss a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements.' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974, 1965, 167 L. Ed.2d 929 (2007)).

The measure of a Rule 12(b)(6) challenge – whether the Complaint raises a right to relief above the speculative level – "does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir. 2008)(quoting in part *Twombly*, 127 S. Ct. At 1965). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft . Iqbal*, 556 U.S. 884, 129 S. Ct. 1937, 1949, 173 L. Ed.2d 868 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that Federal Rule of Civil

5

Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Gunasekera*, 551 F.3d at 466 (quoting in part *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200, 167 L. Ed.2d 1081 (2007))(quoting *Twombly*, 127 S. Ct. at 1964). "Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." *Skinner v. Switzer*, 562 U.S. 233, 242, 179 L. Ed. 2d 233, 236 (2011).

## IV. ANALYSIS

### A. Title VII - Hostile Work Environment

Plaintiff alleges that she "was denied opportunities to receive benefits, bonuses and advancement in her position because of the sexual harassment and hostile work environment in work place." (Doc. #1, *PageID#* 6). She contends, "Defendant's [Dayton Gastroenterology] acts interfered with [her] work performance and also created a hostile work environment which resulted in resignation of her job . . ." (Doc. #5, *PageID#* 46). Defendants argue that "the complaint filed by Ms. Graves contains no facts that demonstrate an objectively hostile work environment." (Doc. #4, *PageID#* 30).

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Plaintiff is not required to plead a prima facie case under *McDonnell Douglas*

and its progeny in order to survive a motion to dismiss her Title VII discrimination claims. *Keys v. Humana*, 684 F.3d 605, 609 (6th Cir. 2012). Rather, Plaintiff must only allege sufficient "factual content" from which the Court, utilizing its "judicial experience and common sense," is able to "draw the reasonable inference," *Iqbal*, 556 U.S. at 678, 679, that Defendant "discriminate[d] against [Plaintiff] with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(1)(1); *Keys*, 684 F.3d at 610.

Under the hostile work environment theory, a "workplace [that] is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" violates Title VII. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)(citations and internal quotation marks omitted). There is both a subjective and an objective prong to this standard. In other words, "the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as abusive." *Black v. Zaring Homes*, 104 F.3d 822, 826 (6th Cir. 1997)(citing *Harris*, 510 U.S. at 21-22). "The determination of whether harassing conduct is sufficiently severe or pervasive to establish a hostile work environment is not susceptible to a mathematically precise test." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 333 (6th Cir. 2008) (internal quotation marks omitted). Rather, Courts must look at "all the circumstances,"

including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Harris*, 510 U.S. at 17.

A review of Plaintiff's Complaint and the attached timeline, which Plaintiff submitted to the OCRC, indicate that Schum allegedly sent her an inappropriate text message on January 25, 2013 stating, "You just have fun and wild sex," and another one on February 1, 2013 stating, "You and your husband lay out a wonderful dinner and have wild sex on the table!!!!! I do think about sex all the time. I'm just not getting it." (Doc. #1-2, *PageID#* 16).

Thereafter, Plaintiff states that she reported the inappropriate behavior to Craig Penno, Practice Manager, on February 5, 2013.  (Doc. #1, *PageID#* 4).  According to Plaintiff, Penno stated the text from Schum was inappropriate and constituted sexual harassment.  (Doc. #1-2, *PageID#* 16).  Plaintiff alleges Penno "said he would discuss [the] situation with the MD's and address the issue with David."  (*Id.*).  The next day – February 6, 2013 – Plaintiff again met with Penno to discuss Schum's behavior.  During this meeting, Plaintiff alleges Penno stated that Schum's conduct "was against company policy and that corrective action was a possibility and perhaps termination of David."  (*Id.*).  Plaintiff also alleges that Penno asked Schum to write an apology letter to her.  (*Id.*).  Plaintiff alleges that she received an apology letter from Schum the next day, February 7, 2013, "via text and by hand."  (*Id.*).

Plaintiff further asserts that Schum also "attempted to discuss the situation"

8

directly with her but she explained to him "there was nothing to discuss on the personal level." (*Id.*). Plaintiff alleges Schum "walked away angry." (*Id.*). She asserts that Schum again attempted to speak with her about their "future friendship" the next day – February 8, 2013 – and when she again explained she was not going to discuss it with him, "[h]e became very angry and walked away and I never saw him again that day." (Doc. #1-2, *PageID#* 17). Plaintiff alleges that she again spoke to Penno about the issue on February 9, 2013 and was reassured it would be handled. (Doc. #1-2, *PageID#* 17). Plaintiff alleges the issue was never dealt with and, in fact, Schum was later promoted to a supervisory position that allowed him to supervise her.

Plaintiff details a number of instances in which she was denied certain benefits or other privileges by Schum, acting in his supervisory role. For example, she alleges that Schum took away her shared duties as an anesthesia facilitator. Plaintiff also asserts that when she confronted Schum about this, he told her, "you did this to yourself, you should have never gone to Craig [Penno], this is just the beginning." (Doc. #1-2, *PageID#* 18). Plaintiff further alleges that while Schum would allow other staff members to leave early and take breaks throughout the day, she was never provided with the same opportunities. (Doc. #1-2, *PageID#* 18). In particular, Plaintiff recounts one such incident as follows:

> CRNA staff would be expected to work 10 – 11 hour shifts and several times per week, you were expected to work late and remain in the building until all patients have been discharged. David Schum would make the assignments, when I was assigned late I was expected to relieve the last CRNA and as stated above stay until the last person was discharged. When I was not the late person and David Schum was the late person he would never relieve me, although he would relieve other staff members. It got to be a joke with the "back charge RN's", Oh David is

9

> late I guess Kim won't be getting out on time. I did ask David Schum why he never relieved me when he was late and he responded "You did this to yourself."

(Doc. #1-2, *PageID#* 18). Plaintiff alleges that she would see Penno in the hallway and tell him about Schum's continuing hostility, but Penno "never followed up to see if anything could be done to help the situation." (Doc. #1-2, *PageID#* 19). On March 30, 2013, Plaintiff alleges she met with Penno and gave him her 60-day notice of resignation and notified him that "[t]his is a hostile work environment." (Doc. #1-2, *PageID#* 17).

Although Plaintiff alleges Schum sent her only two sexually natured text messages, she also alleges that despite her subsequent complaints to management about Schum's inappropriate behavior he was promoted to a supervisory role and thereafter used his new authority to deny her benefits and privileges provided to other employees. Plaintiff further alleges that when she confronted Schum about this unfair treatment, he told her on two occasions, "you did this to yourself . . ." (Doc. #1-2, *PageID#* 18).

Although the incidents that occurred involving Schum *after* the two sexually natured text messages do not appear on their face to be sexual in nature, Plaintiff's allegations, taken as true and viewed in a light most favorable to her, nonetheless are sufficient to set forth a plausible hostile work environment claim. As the Sixth Circuit has explained, "the conduct underlying a sexual harassment claim need not be overtly sexual in nature. Any unequal treatment of an employee that would not occur but for the employee's gender may, if sufficiently severe or pervasive . . . , constitute a hostile environment in violation of Title VII." *Williams v. GMC*, 187 F.3d 553, 565 (6th Cir.

1999); *see also Waldo v. Consumers Energy Co.*, 726 F.3d 802, 815 (6th Cir. 2013) ("[Defendant-Appellant] attempts to isolate specific incidents which, considered apart from the context in which they occurred, do not appear to contain sexual connotations or gendered overtones. This approach fails, however, because '[f]acially neutral incidents may be included' in a hostile-work-environment analysis of the totality of the circumstances when there is 'some circumstantial or other basis for inferring that incidents sex-neutral on their face were in fact discriminatory.")(citing *Alfano v. Costello*, 294 F.3d 365, 378 (2d. Cir. 2002)).

Accordingly, accepting Plaintiff's allegations as true and construing them in a light most favorable to her, the Court is able to draw a reasonable inference that the allegedly harassing conduct could be deemed sufficiently severe or pervasive so as to establish a plausible hostile work environment claim. For these reasons, dismissal of Plaintiff's hostile work environment claim against Defendant Dayton Gastroenterology is not presently warranted.[2]

### B. Ohio Revised Code § 4112

Plaintiff also brings a hostile work environment claim pursuant to Ohio Rev. Code § 4112 against Defendants Dayton Gastroenterology and Schum. Due to their similarities, "[t]he same analysis generally applies to claims under Title VII and the [Ohio Civil Rights Act]." *Arnold v. City of Columbus*, 515 Fed. Appx. 524, 529 (6th Cir. 2013)

---

[2] To the extent it remains unclear from her Complaint, Plaintiff clarifies in her memorandum in opposition that she is not attempting to bring a Title VII claim against Defendant Schum. (Doc. #5, *PageID#* 51).

(citing *Staunch v. Cont'l Airlines, Inc.*, 511 F.3d 625, 631 (6th Cir. 2008); *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 66 Ohio St. 2d 192, 421 N.E. 128, 131 (Ohio 1981)). Accordingly, for the same reasons the Court concludes Plaintiff has set forth a plausible hostile work environment claim under Title VII, the Court also finds that Plaintiff has set forth a plausible hostile work environment claim against Defendant Dayton Gastroenterology under Ohio Rev. Code § 4112.

Likewise, while individual defendants cannot be held personally liable under Title VII, *see Wathen General Elec.*, 115 F.3d 400, 405-06 (6th Cir. 1997), the Supreme Court of Ohio has determined that individual supervisors and managers may be held jointly or severally liable with their employer for their own violations of Ohio Revised Code § 4112. *Genaro v. Central Transport.,* 84 Ohio St. 3d 293, 1999 Ohio 353, 703 N.E.2d 782, 785 (1999). Accordingly, while Defendant Schum, as Plaintiff's alleged supervisor, cannot be held liable under Title VII for his allegedly discriminatory conduct, the Complaint raises a plausible claim of individual liability against Schum under Ohio Rev. Code § 4112.

For these reasons, Plaintiff's state law employment discrimination claims against Defendants Dayton Gastroenterology and Schum are not presently subject to dismissal.

### C. Intentional Infliction of Emotional Distress

Plaintiff alleges that "Defendant's representative, agents and officers, in the presence of other employees, and visitors to Defendant Dayton Gastroenterology, Inc., ridiculed and maligned Plaintiff in an outrageous and patently offensive manner as to her

privacy as a female and made sexually suggestive remarks." (Doc. #1, *PageID#* 8). Plaintiff contends she was "caused to incur great anxiety, nervousness, and embarrassment," and as a result, she suffered "emotional distress that has damaged [her] physical well-being . . . ." (*Id.*)

Defendants argue that Plaintiff's allegations "[e]ven if . . . considered true . . . would not rise to the level of 'outrageous and extreme conduct' required by the Ohio Supreme Court . . . ." (Doc. #4, *PageID#* 33). Accordingly, Defendants request Plaintiff's claim for Intentional Infliction of Emotional Distress be dismissed. Plaintiff contends dismissal is not proper as "Defendants' acts towards Plaintiff were extreme, outrageous and went beyond all possible bounds of decency because the unwarranted sexual advances not only harmed Plaintiff, but when such conduct was reported, Defendant acted with hostility toward Plaintiff which eventually led to her resignation." (Doc. #5, *PageID#* 47).

In Ohio, four elements comprise the tort of intentional infliction of emotional distress:

> (1) the defendant intended to cause emotional distress or knew or should have known that its conduct would result in serious emotional distress to the plaintiff; (2) defendant's conduct was outrageous and extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) defendant's conduct was the proximate cause of plaintiff's psychic injury; and (4) plaintiff's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it.

*Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 2008 U.S. App. LEXIS 19342, *25-26 (6th Cir. 2008)(internal quotation marks and citations omitted); *see Miller*

13

*v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995).

The Supreme Court of Ohio has discussed what constitutes extreme and outrageous conduct sufficient to support a claim of intentional infliction of emotional distress:

> With respect to the requirement that the conduct alleged be "extreme and outrageous," we find commend d to Section 46 of the Restatement, *supra*, at 73, to be instructive in describing the standard:
>
>> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
>
> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where someone's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam. See Magruder, Mental and Emotional Disturbance in the Law of Torts, 49 Harvard Law Review 1033, 1053 (1936).

*Yeager v. Local Union 20*, 6 Ohio St.3d 369, 374-75, 6 Ohio B. 421, 453. N.E.2d 666 (1983) (citing Restatement of Law 2d, Torts (1965) 71, Section 46(1)).

Although the allegations, taken as true and viewed in a light most favorable to

14

Plaintiff, certainly indicate that Schum acted inappropriately, they do not rise to the level of intentional infliction of emotional distress under Ohio law. Schum's two sexually natured text messages, his phone calls while intoxicated, his hostile comments, and different treatment of Plaintiff, are offensive but are not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yeager*, 6 Ohio St.3d at 375; *see also Heimberger v. Pritzker*, 2014 U.S. Dist. LEXIS 34504 ("Sexual harassment is not 'extreme and outrageous' enough to sustain a claim for IIED under Ohio law when, even if distasteful, the alleged comments and actions were not, for example, 'severe' or 'physically threatening or humiliating.'")(citations omitted); *Wolfe v. Thermo Fisher Scientific, Inc.*, 2009 U.S. Dist. LEXIS 41702, *8-9 (S.D. Ohio 2009)(remarks that were sexual in nature did not rise to the level of intentional infliction of emotional distress under Ohio law because they were not so outrageous and extreme to be found atrocious or utterly intolerable in a civilized community)(citations omitted).

Accordingly, Plaintiff's claim for Intentional Infliction of Emotional Distress is dismissed.

### D. Negligent Infliction of Emotional Distress

Plaintiff also brings a claim for negligent infliction of emotional distress. Plaintiff contends, "Defendant and its representatives, agents and officers were aware that their conduct would affect Plaintiff's sensitivity, self-consciousness and insecurity, but Defendant and its representatives, agents, and officers nonetheless maliciously and

15

cruelly ridiculed Plaintiff, thus causing severe nervousness, producing emotional and physical defects, and further injuring the mental attitude fostered by the problem, and otherwise intentionally [sic] inflicted emotional distress." (Doc. #1, *PageID#* 11). Defendants request dismissal of this claim, arguing that "[t]he complaint does not allege any event or facts that could be construed as giving rise to an actionable negligent infliction of emotional distress claim." (Doc. #4, *PageID#* 36). Plaintiff provided no argument in opposition. *See generally* Doc. #5, *PageID##* 40-52.

Under Ohio law, in order to recover for negligent infliction of emotional distress in the absence of a contemporaneous physical injury, a plaintiff must have "either witnessed or experienced a dangerous accident or appreciated the actual physical peril." *Heiner v. Moretuzzo*, 73 Ohio St. 3d 80, 86-87 (1995); *see also Doe v. SexSearch.com*, 551 F.3d 412, 417 (6th Cir. 2008) (finding no claim for negligent infliction of emotional distress where plaintiff's "alleged injuries result from embarrassment and harm to social standing and employment prospects" and never alleged "that he experienced a dangerous accident or appreciated actual physical peril"). Plaintiff's allegations, taken as true and construed in a light most favorable to her, simply do not indicate that she witnessed an accident or was in physical peril at work. Accordingly, her claim for negligent infliction of emotional distress is dismissed.

  **E.**  **Defamation/Slander Per Se**

Defendants contend, "this cause of action cannot be plausible . . . because there are no facts in the complaint describing the alleged slander. Further, Mr. Schum is not

16

identified by name anywhere within the fourth cause of action."  (Doc. #4, *PageID#* 35).

Defendants also argue that any allegedly defamatory statement made prior to February 27, 2013 is barred by the applicable one-year statute of limitations set forth in Ohio Rev. Code § 2305.11(A).

> Under Ohio law, the elements of a defamation claim, whether libel or slander, are "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by publication."

*Harris v. Bornhorst*, 513 F.3d 503, 522 (6th Cir. 2008)(quoting *Akron-Canton Waste Oil, Inc. v. Safety-Kleen Oil Servs., Inc.*, 81 Ohio App. 3d 591, 611 N.E.2d 955, 962 (Ohio Ct. App. 1992)).

Plaintiff contends that "Defendant's misconduct towards [her] amounted to defamation because the communications were known to be false, they were detrimental to Plaintiff's character, they were communicated to at least one third party, and Plaintiff was harmed – financially and regard [sic] her career – as a result."  (Doc. #5, *PageID#* 48). Problematic for Plaintiff, however, is that she fails to actually set forth any factual allegations regarding any false statements made about her to others.

Although Plaintiff believes "it is clear from [her] Complaint that she was harassed and slandered in [sic] presence of her co-workers and visitors," Doc. #5, *PageID#* 48, her Complaint does not indicate that any false statements were made by either Defendant. Even a thorough review of the timeline Plaintiff attached to her Complaint fails to indicate any false statements were made about her to others.  Rather, Plaintiff appears to

largely rely on Schum's allegedly hostile comments to her. Plaintiff vaguely asserts that she "has been continuously ridiculed, maligned and generally harassed and unjustifiably criticized, ridiculed, and otherwise slandered in the presence of Plaintiff's co-workers and visitors at Defendant Dayton Gastroenterology, Inc." (Doc. #1, *PageID#* 10). The next paragraph in Plaintiff's Complaint simply asserts that "[s]uch acts on the part of Defendant, in maligning plaintiff's professional vocational competency and ability including sexual advancements, to function with co-workers, constitute slander per se." (Doc. #1, *PageID#* 10). Such conclusory allegations, however, fail to provide the factual detail necessary to state a plausible claim to relief for defamation. Accordingly, Plaintiff's defamation claim is dismissed.[3]

## IT IS THEREFORE ORDERED THAT:

1. Defendants' Motion to Dismiss (Doc. #4) is GRANTED, in part, and DENIED, in part;

2. Plaintiff's state law claims for Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress, and Defamation are DISMISSED with prejudice; and,

3. Plaintiff's hostile work environment claims under Title VII and Ohio Rev. Code § 4112 remain pending.

August 18, 2014                                  s/Sharon L. Ovington
                                                 Sharon L. Ovington
                                                 Chief United States Magistrate Judge

---

[3] Defendants also correctly note that the applicable statute of limitations for a defamation action in Ohio is one year from the date the cause of action accrued. *See* Ohio Rev. Code § 2305.11(A). The statute of limitations begins to run on the date of publication, not the date of discovery of the defamation. *Lewis v. DelCounty JVSD*, 161 Ohio App.3d 71, 2005 Ohio 2550, 829 N.E.2d 697 (2005). Thus, while Plaintiff fails to set forth a plausible defamation claim, even if she had properly set forth such a claim it would also be dismissed to the extent it was based upon any allegedly defamatory statement made one year prior to the filing of her Complaint on February 27, 2014.